# WILLIAMS v. VENETIAN SHORES MARINE, INC., et al.

## Case No. 83-04-CC-15

County Court, Monroe County

May 20, 1983

### APPEARANCES OF COUNSEL

**Jeff D. Gautier** for defendant.

**Frank Marks** for plaintiff.

### OPINION OF THE COURT

J. ALLISON DEFOOR, II, County Judge.

This cause came on to be heard as a trial by Court, and the Court having heard the testimony of witnesses and the argument of counsel, the Court finds that the plaintiff delivered to the defendant's place of business his 1973 Glastron boat with 1974 Mercury motor and a trailer for the defendant to repair the motor, which is the business of the defendant. The parties had a long-standing business relationship of essentially similar nature.

And thus this case joins a long lineage of cases which have ended such long-standing relations. *See, e.g., Clemont Marine Sales v. Harmon*, 347 So.2d 839 (Fla. 2d DCA 1977), *Marine Office v. Aqua Dynamics*, 295 So.2d 370 (Fla. 3rd DCA 1974).

Contemporaneously, defendant had plaintiff execute a work order which contained in miniscule print a waiver of liability which doubtless defendant hoped would, should circumstances such as these arise, prove a talisman against liability. It is doubtful that the plaintiff read it, or even noticed it.

As more tangible precaution, against the threat of boat theft, defendant secured the plaintiff's boat to a large, heavy chain running the length of his property, paralleling U.S. #1. To this large chain he attached a considerably smaller 3/16" chain, and used the latter to secure the plaintiff's boat. The latter chain was not case hardened, but when a file is used to break it, as here, there is no difference. Additional security precautions included proximity and exposure to U.S. #1 and the nearby Coast Guard base, mercury vapor lights, and a captive, in-house, transient population of "live-aboards" whose well-known, naturally-high paranoia was put to work by the defendant by both training and placement of the bathrooms such that surveillance would be both frequent and inevitable. Doubtless as a result, in 23 years only two boats have been stolen from the defendant's premises, including this one, by persons unknown, which occurred from defendant's premises, leading to this lawsuit. The theft was achieved by filing, first half-way through the chain unsuccessfully, then successfully through it.

As one might imagine in a state as water-sports oriented as Florida, this is one case where the Court is not lacking for guidance from the cases. The bailment by its nature is a bailment for mutual benefit. However, even where it is a gratuitous bailment, the legal principles are the same. Where the bailee has sole, actual and exclusive physical possession of the goods, he is presumed negligent if he cannot explain the loss or disappearance of the goods, and the law imposes on him the burden of showing that he exercised the degree of care required by the nature of the bailment. *Marine Office-Appleton & Cox v. Aqua Dynamics, Inc.*, 295 So.2d 370, 371 (Fla. 3rd DCA 1974).

The standard of care cited, blissfully to the Court, by both parties as ordinary care, is, the care which a reasonably prudent man would bestow on his own goods. *Fruehauf Corp. v. Aetna Ins. Co.*, 336 So.2d 453 (Fla. 1st DCA 1976).

In the case at bar the defendant came forward with just such proof. The only counterpoint to the elaborate precautions which the defendant took to safeguard the plaintiff's property are the size variations between the master chain (which had never been cut in defendant's memory) and the chain used to couple it to the defendant's boat; the

latter chain being the one cut. This difference at first troubled the Court, but against the plethora of precautions which the defendant did take, it is of no moment. The Court has no reason to believe that a thicker chain would have done anything other than slow, not deter, the thieves. Indeed their determination is evidenced by the first, unsuccessful cut.

Ultimately the Court was persuaded by two observations. First, the precautions taken by the defendant to secure the plaintiff's boat greatly exceeded those which the plaintiff testified he used to secure it himself, which is analogous to the standard of care outlined in *Fruehauf, supra*. Finally, the Court wonders if this theft is not more a tribute to the determination of the thieves than to any lack of due care by the defendant. The Court wonders just what would deter thieves who would first cut unsuccessfully half-way, then successfully through a $3/16"$ chain, in full view of U.S. #1, under mercury vapor lights, within 100 yards, and in full view of a United States Coast Guard station, and on the same premises with numerous sensitive live-aboard neighbors who answer the call of nature by passing by the scene of the crime.

It is therefore,

ORDERED AND ADJUDGED that plaintiff take nothing by this suit and that defendant go hence without day.