114 So.2d 431 (1959)
ARMORED CAR SERVICE, INC., a Florida corporation, Appellant,
v.
FIRST NATIONAL BANK OF MIAMI, Appellee.
No. 59-95.
District Court of Appeal of Florida. Third District.
September 10, 1959.
*432 Brown, Dean, Adams & Fischer and Charles K. George, Miami, for appellant.
Scott, McCarthy, Preston, Steel & Gilleland and Richard H. Williams Maloy, Miami, for appellee.
CARROLL, CHAS., Judge.
The appellant The Armored Car Service, Inc., the plaintiff below, appeals from an adverse judgment rendered by the Civil Court of Record in Dade County. The action was tried before the court without a jury, and the judgment for the appellee, The First National Bank of Miami, was entered at the close of the plaintiff's case.
The amended complaint contained the following allegations:
"2. That on and prior to September 9, 1955 the plaintiff for consideration, agreed to pick up money bags at various public schools in Dade County, Florida, for the Dade County Board of Public Instruction, and deliver same to the defendant, The First National Bank of Miami, located in Dade County, Florida.
"3. That on September 9, 1955 the plaintiff, by its agent, servant and employee, picked up a locked money bag, being No. 434, containing $1,511.25, at the Miami Springs Junior High School, situated in Dade County, Florida, and on September 10, 1955 delivered said money bag and its mentioned contents to an agent, servant or employee of the defendant authorized to receive delivery of money bags in such cases.
"4. That said authorized agent, servant or employee of the defendant provided a receipt to the plaintiff acknowledging receipt and delivery of the said money bag.

*433 "5. That the aforementioned money bag was delivered for the purpose of having the amount of its contents deposited and credited to the account of the Dade County Board of Public Instruction and/or Miami Springs Junior High School Cafeteria Fund Account.
"6. That an unauthorized agent, servant, or employee of the defendant bank stole and/or misappropriated and/or lost the mentioned money bag and its contents. Or in the alternative, negligently and carelessly misplaced the contents of the mentioned money bag. All to the damage of the plaintiff.
"7. That the mentioned money has never been credited to the account or fund of the Dade County Board of Public Instruction or the Miami Springs Junior High School, or otherwise paid by the defendant.
"8. That subsequently the plaintiff was compelled to pay to the Dade County Board of Public Instruction and Miami Springs Junior High School the mentioned $1,511.25 to indemnify the said Board and School for its loss. That such payment was required by law and by the agreement in paragraph 2.
"9. As a direct result of the misconduct, negligence and misappropriation of the mentioned money bag and its contents as aforesaid, the plaintiff has been damaged in the amount of $1,511.25.
"10. The plaintiff has a greater right of possession to the mentioned bag and its contents than the defendant.
"11. That the plaintiff has notified the defendant of its right of possession of the money bag and its contents and demanded the return of the $1,511.25 in question, or compensation in a like amount, but the defendant has refused to do either, all to the damage of the plaintiff."
Recovery was sought in two counts, the first claiming a conversion of the money, and the second misappropriation or loss of the money by the bank, and in the alternative that the bank "negligently and carelessly misplaced the contents of the mentioned money bag." The answer of the defendant bank denied the allegations of the amended complaint.
The facts as disclosed on the trial were not in dispute. The Dade County School Board had a number of accounts in certain banks, including the defendant The First National Bank of Miami. It was the custom to send monies from school cafeterias to such bank or banks for deposit, in canvas bags which were locked, the keys to which were held by the school involved and the bank having the account. The Armored Car Service was used to transport the money bags containing such deposits to the banks. The money in this case belonged to the Activities Fund of the Miami Springs Junior High School, and evidence showed that it was intended to be deposited to the credit of the Junior High School in the Curtiss National Bank of Miami Springs, where that school had an account. The school had no account in The First National Bank of Miami. A deposit slip was made out to the Curtiss National Bank and locked with the money in the bag. The bag was then placed in the school cafeteria to be picked up by Armored Car Service for delivery to the Curtiss Bank in Miami Springs. The cafeteria money was prepared in a similar manner, in a bag, for deposit in The First National Bank of Miami. When Armored Car Service picked up the two bags of money on the day in question, an employee in the cafeteria, being different from the person who prepared the Activities Fund money for deposit, mistakenly instructed Armored Car Service to deliver both bags to The First National Bank. The bag intended for the Curtiss Bank in Miami Springs was then delivered by Armored Car Service to The First National Bank of Miami, received and receipted for by The First National Bank, and not thereafter *434 credited to the account of the school or the School Board, and it disappeared without trace.
Counsel for the parties agreed that Armored Car Service had reimbursed the school and had succeeded to the school's rights to maintain an action for recovery of the money and, therefore, no question was raised as to the right and propriety of the appearance of the Armored Car Service as the plaintiff in this case.
The receipt given by the bank to the delivery service was not a deposit receipt, but one which acknowledged the delivery to the bank of the item. The employee who received and receipted for the item at the bank died prior to the trial, and no witness was found who had knowledge of what took place with reference to the bag of money involved, after the bank received it.
The claim of conversion as contained in count one of the complaint was not made out, and the trial court was not in error in so concluding. Money may be the subject of conversion (Southern Express Co. v. Van Meter, 17 Fla. 783; 53 Am.Jur., Trover & Conversion, § 8), but before a party may be held guilty of such conversion, it must be shown that there was exercised a positive, overt act or acts of dominion or authority over the money or property inconsistent with and adverse to the rights of the true owner. Quitman Naval Stores Co. v. Conway, 63 Fla. 253, 58 So. 840; Star Fruit Co. v. Eagle Lake Growers, 160 Fla. 130, 33 So.2d 858. No such showing was made in this case. See Brockington v. Central Life Ins. Co., 131 Fla. 250, 173 So. 908; George v. Bekins Van & Storage Co., 33 Cal.2d 834, 205 P.2d 1037; Prosser, Torts, § 15 (2d ed. 1955); 53 Am.Jur., Trover & Conversion, §§ 47, 52 et seq.; 6 Am.Jur., Bailments, §§ 367, 370.
The contention that the bank should be held for negligence asserted under the second count, presents the added question of whether the bailment resulting from delivery of the bag to the defendant bank was one for mutual benefit of the school and the bank, or was a gratuitous bailment. This is so because if the bailment were one for mutual benefit the plaintiff could recover on a showing of ordinary negligence, but if the bailment were gratuitous it would be necessary to establish gross negligence on the part of the bank in order for the plaintiff to recover. Ferguson v. Porter, 3 Fla. 27, 38; O'Brien v. Vaill, 22 Fla. 627, 1 So. 137; 6 Am.Jur., Bailments, § 254.
A bailment for the mutual benefit of the parties is one in which the parties contemplate some price or compensation in return for the benefits flowing from the fact of bailment. 6 Am.Jur., Bailments, § 19. It necessarily involves an agreement or understanding to that effect, either express or implied. Therefore, where the possession of one's personal property passes to another by mistake, accident or through force of circumstances under which the law imposes upon the recipient thereof the duty and obligation of a bailee, when there is a lack of a meeting of the minds, an absence of any voluntary undertaking, and no reasonable basis for implying an intent of any mutual benefit, the bailment resulting is a constructive bailment and gratuitous. See United States Fire Ins. Co. v. Paramount Fur Service, Inc., 168 Ohio St. 431, 156 N.E.2d 121; 6 Am.Jur., Bailments, §§ 18, 86; Brown, Personal Property, § 91.
It is clear from the facts which were established, that the bailment in this case was not one for mutual benefit of the parties. The bag was delivered to the bank by mistake, and was not intended by the school to become a general or special deposit in the defendant bank. The bank received the item thus inadvertently delivered to it, without any express or implied undertaking for compensation to the bank or for any particular handling or disposition thereof by the bank. Those circumstances permit no other conclusion *435 than that the bailment was a constructive and gratuitous one. The duty imposed in such circumstances called on the bailee to exercise some care, the degree thereof to be determined by the facts relating to the bailment.
In the trial of the case before the court without a jury, the judgment was entered at the close of presentation of evidence by the plaintiff, upon granting of defendant's motion contending that the plaintiff had not made a case upon which relief could be granted. In contending that the trial court was in error in so holding, the appellant argues that its showing that the bailee failed to return the bailed article made a prima facie case for recovery, on the basis of ordinary negligence if it is determined that the bailment was one for mutual benefit, or on the basis of gross negligence if the bailment is held to be gratuitous. The case of Stegemann v. Miami Beach Boat Slips, 5 Cir., 1954, 213 F.2d 561, which arose in Florida, supports that contention of appellant as it applies to a bailment for mutual benefit. It is not necessary for us to decide or rule on appellant's contention that the failure of the bailee to produce and return the article, following a gratuitous bailment, will give rise to an inference of gross negligence of the bailee,[1] because the plaintiff's proofs went beyond showing simply the bailment and the failure of the bailee to return the bailed article.
At the trial the plaintiff called an employee of the bank; and his explanation went into the record. It included testimony that the bank handled scores of such bags; that its routine method of handling bags which were delivered to it by mistake, such as was done in this instance, was to set them aside, and call the messenger who had brought the bag in; and that such bag would then be returned to the messenger, that is, picked up by the messenger at his convenience; and, further, it was brought out by that witness that no records were made by the bank of its receipt or handling, or of its return of such misdelivered bags to the messenger. No receipt would be taken for such a bag where none had been given by the bank; though according to that witness the bank's custom was to take a receipt if one was known to have been given by the bank when the bag came in.
In granting judgment at the close of the plaintiff's case the trial judge necessarily concluded the plaintiff had failed to make out a prima facie case of gross negligence on the part of the bank with reference to this constructive and gratuitous bailment. It is our opinion that the learned trial judge was in error in so holding. The plaintiff showed that the bank received, accepted and receipted for a bag of money consisting of cash and checks amounting to over $1,000; that the bag was delivered to the bank by mistake, having been intended for deposit in another bank; that the defendant bank had ready means of determining that the bag in question and the deposit which it represented had been delivered by mistake, because the bank had no key to the bag and was unable to credit it to any depositor there; that the bank was unable to produce the bag when called on by the bailor shortly thereafter; and that the plaintiff established the bank's questionable method of handling such misdelivered bags; and established that the bank made no record of its handling or disposition of the bag involved in this case; and that if it was redelivered to the messenger service which brought it there, no receipt or record of that transaction was made.
It is our opinion that the evidence presented made a prima facie showing that the defendant, as a banking institution, failed to exercise that degree of care, for the bag of money left there by mistake, which the facts and circumstances of such bailment required of the bailee-bank under the law. It may be that if and when the bank puts on its case it will show some other or different facts relating to this bailment. The judgment appealed from *436 is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.
Reversed and remanded.
HORTON, C.J., and PEARSON, J., concur.
NOTES
[1] See, generally, 6 Am.Jur., Bailments, § 364.